AIKEN SCHENK & RICCIARDI P.C.
2390 E. Camelback Rd., Suite 400
Phoenix, Arizona 85016
Telephone: (602) 248-8203
Facsimile: (602) 248-8840
E-Mail: prr@aikenschenk.com
Heather A. Macre - 026625
Philip R. Rupprecht - 009288
Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PEORIA REGIONAL MEDICAL CENTER, LLC,<br><br>        Debtor.<br><br>Address: 8020 E. Palm Ln.<br>      Mesa, AZ 85207<br><br>Taxpayer ID No(s).: xx-xxx0458 | Chapter 11 Proceedings<br><br>Case No. 2:17-bk-11742-SHG<br><br>**MOTION TO APPROVE POST-PETITION FINANCING UNDER §364** |

  Peoria Regional Medical Center, LLC (the "Debtor"), by and through undersigned counsel, hereby moves for approval of the below-described post-petition financing terms under 11 U.S.C. §364 and respectfully represents as follows:

  1. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 4, 2017.

  2. The Debtor was organized on November 5, 2007. Timothy A. Johns is the Manager of the Debtor. The Debtor was formed for the purpose of owning certain real property located at 26320 N. Lake Pleasant Parkway, Peoria, Maricopa County, Arizona 85345 (the "Property"). The Debtor is in the process of constructing an acute care hospital on the Property and has funded the building of a 3-story steel framed structure. The Debtor has no employees, though it may hire some in the future, post-confirmation. The Debtor is currently in the process of locating a buyer for the Property.

1

1099358.1

Case 2:17-bk-11742-SHG   Doc 236   Filed 12/13/19   Entered 12/13/19 12:15:21   Desc
Main Document   Page 1 of 20

3. The Debtor is operating its business and managing its assets as a debtor-in-possession in accordance with 11 U.S.C. §§1107 and 1108.

4. The Debtor was delinquent on the payment of its post-petition property taxes as further reflected in the Maricopa County Treasurer's *Notice of Tax Liens and Update on Unpaid Prepetition and Post-Petition Taxes* (DE #224). Specifically, the debtor owns 2018 real property taxes of $108,512.22 and 2019 taxes of $51,281.62.

5. The Debtor also wishes to pay for fencing and other measures to ensure that the Property is secure and to keep the surrounding community safe.

6. The Debtor does have the cash to pay the delinquent post-petition taxes or for measures to ensure health and safety.

7. Scott A. Gould ("Gould") has agreed to loan the Debtor $193,569 to pay the delinquent post-petition taxes, the expenses associated with measures to ensure health and safety.

8. The Debtor believes it would be in the best interests of the Debtor's estate and creditors for Gould to loan the Debtor the funds to pay these expenses and a one year interest reserve.

9. The Debtor will repay Gould on the terms and conditions set out in the proposed loan documents attached hereto as **Exhibit 1**.

10. The proposed note requires Debtor to repay the $193,569 with interest at 13%, amortized over 12 months with the first payment due upon January 10, 2020 and in monthly payments thereafter. For 12 months, the interest payments will be made from the interest reserve.

11. Gould's loan will be secured by a first-position Deed of Trust on the Property.

12. Fastest Lap, LLC, which currently holds the first position lien on the property would be primed and its lien will be subordinate Gould's.

13. Fastest Lap, LLC reviewed the attached loan documents it **consents** to the subordination of its lien.

2

1099358.1

14. Section 364 provides that a debtor must obtain court approval of non-ordinary course financing after notice and a hearing. 11 U.S.C. §364. A debtor's business judgment is a factor in approving a request for post-petition financing. *In re 944 Media, LLC*, 2010 WL 4520059, *2 (Bankr. C.D.Cal. 2010).

WHEREFORE, the Debtor prays that this Court enter an order authorizing the Debtor to obtain post-petition financing from Gould for the funds to pay the delinquent post-petition property taxes and other health-and-safety expenses and granting such other relief as this Court may deem proper.

DATED this 13th day of December, 2019.

AIKEN SCHENK & RICCIARDI P.C.

By /s/ Philip R. Rupprecht
Philip R. Rupprecht
2390 East Camelback Road, Suite 400
Phoenix, Arizona 85016-3479
Attorneys for Debtor

COPY of the foregoing mailed, or served
via electronic notification* or fax** if so marked,
this 13th day of December, 2019, to:

U.S. TRUSTEE'S OFFICE * ustpregion14.px.ecf@usdoj.gov
Renee Sandler Shamblin* Renee.S.Shamblin@usdoj.gov
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Peter Muthig* muthigk@mcao.maricopa.gov
Maricopa County Attorney's Office
Civil Services Division
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, AZ 85004
*Attorney for Maricopa County Treasurer*

David H. Benton* david.benton@peoriaaz.gov; caofiling@peoriaaz.gov
Office of the City Attorney
City of Peoria
8401 West Monroe Street, Room 280
Peoria, AZ 85345
*Attorneys for City of Peoria*

3

1099358.1

Daren R. Brinkman* Firm@Brinkmanlaw.com
Brinkman Portillo Ronk, APC
4333 Park Terrace, #205
Westlake Village, CA 91361
*Attorneys for David Gottlieb, Creditor Trustee
of the Gilbert Hospital Unsecured Creditor Trust*

Keith L. Hendricks* khendricks@law-msh.com
Moyes Sellers & Hendricks
1850 N. Central Avenue, Suite 1100
Phoenix, Arizona 85004
*Attorneys for Fastest Lap, LLC*

[signature]

# EXHIBIT 1

WHEN RECORDED MAIL TO:

**RLS Mortgage, Inc.**
**PO Box 97485**
**Phoenix, AZ 85060**

Loan No. _____

**WARNING: THIS DEED OF TRUST AND ASSIGNMENT OF RENTS CONTAINS A DUE ON SALE CLAUSE AND PROHIBITS THE TRUSTOR FROM FURTHER ENCUMBERING THE REAL PROPERTY DESCRIBED HEREIN.**

## DEED OF TRUST AND ASSIGNMENT OF RENTS
## RESIDENTIAL 1-4

| | |
|---|---|
| **DATE:** | 12/6/2019 |
| **TRUSTOR:** Address: | Peoria Regional Medical Center LLC. a(n) Arizona Limited Liability Company <br> 8020 E. Palm Ln. Mesa, AZ 85207 |
| **BENEFICIARY:** Address: | Scott A. Gould, an unmarried man <br> PO Box 97485, Phoenix, AZ 85060 |
| **TRUSTEE:** Address: | Ronald B. Herb, licensed real estate broker in Arizona <br> 5420 W. Onyx Ave. Glendale, AZ 85302 |
| **PROPERTY:** | Located in Maricopa County, State of Arizona, described as follows: |
| Street Address: <br> Tax Parcel: | 26320 N. Lake Pleasant Pkwy Peoria, AZ 85383 <br> 201-30-215 |

**SEE EXHIBIT "A" LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

This Deed of Trust and Assignment of Rents (the "Deed of Trust") is made between Trustor, Trustee and Beneficiary above named.

**Witnesseth:** That Trustor irrevocably grants and conveys to Trustee in Trust, with Power of Sale, the above described real property, and any after-acquired interest therein, together with: (1) All buildings, improvements and fixtures now or hereafter placed thereon; (2) all existing leases, and all future leases executed with respect to such property; (3) all rents, issues, profits and income thereof (all of which hereinafter called "property income") ; (4) all classes of property now or at any time hereafter, attached to or used in any way in connection with the use, operation or occupancy of such property; (5) all property, rights, permits, and privileges now or hereafter owned by Trustor or now or hereafter appurtenant to such property, which entitle Trustor or such property to receive water or electrical power for use thereon. All property granted, conveyed, transferred, and assigned to Trustee hereunder is hereafter referred to as the "property". Trustor warrants that it is well and truly seized of a good and marketable title in fee simple to the real property hereby conveyed; that the title to all property conveyed by this Deed of Trust is clear, free and unencumbered; and that Trustor shall forever warrant and defend the same unto Beneficiary, its successors and assigns, against all claims whatsoever;

1100719.1

SUBJECT, HOWEVER, to the right, power, and authority hereinafter given to and conferred upon Beneficiary to collect and apply such property income; AND SUBJECT TO ANY easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Beneficiary's interest in the property.

**FOR THE PURPOSE OF SECURING:**

(a) Performance of each agreement of Trustor herein contained. (b) Payment of the indebtedness evidenced by promissory note or notes of even date herewith, and any extension or renewal thereof, in the principal sum of $ <u>One hundred ninety-three thousand five hundred sixty-nine and 00/100</u> DOLLARS (U.S. $193,569.00) executed by Trustor in favor of Beneficiary or order. (c) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or its successors or assigns, when evidenced by a promissory note or notes that they are secured by this Deed of Trust. (d) Payment of indebtedness evidenced by any and all other promissory note or notes executed by Trustor in favor of Beneficiary or order, whether executed prior to or after the date hereof and whether or not such note or notes are secured by other property.

**A. TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR COVENANTS AND AGREES:**

1. To keep said property in good condition and repair to the extent consistent, however, with Trustor's obligations to the City of Peoria; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said property in violation of law; and to do all other acts which from character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2. To keep all improvements now or hereafter erected on said property continuously insured against loss by fire or other hazards specified by Beneficiary in an amount of the total obligation secured hereby or the total replacement cost of the improvements on said property, whichever is less. All policies shall be held by Beneficiary and be in such companies as Beneficiary may approve and have loss payable first to Beneficiary, as its interest may appear and then to Trustor. The amount collected under any insurance policy may be applied upon indebtedness hereby secured and in such order as Beneficiary may determine or at option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder nor cause discontinuance of any action that may have been or may thereafter be taken by Beneficiary or Trustee because of such default.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Beneficiary or Trustee, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named, and in any suit brought by beneficiary to enforce this Deed of Trust.

4. To pay before delinquent; the post-petition property taxes, charges for utilities and services furnished to property; all future taxes and assessments affecting said property; when due, all future encumbrances, charges and liens, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees, and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance and all lawful charges, costs, and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured hereby.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: Make or do the same in such manner and to the extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said

1100719.1

property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest, or compromise any encumbrance, change, or lien which in the judgment of either appears to be prior or superior hereto; and in exercising any such powers, pay necessary expenses, employ counsel, and pay its reasonable fees. All amounts so paid, together with interest thereon at the same rate as is provided for in the note secured by this Deed of Trust or at the highest legal rate, whichever is greater, shall be part of the debt secured by this Deed of Trust and a lien on the above property.

     5.     To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, together with interest from date of expenditure at the same rate as is provided for in the note secured by this Deed of Trust or at the highest legal rate, whichever is greater. Any amounts so paid by Beneficiary or Trustee shall become part of the debt secured by this Deed of Trust and a lien on said property and immediately due and payable at option of Beneficiary or Trustee.

     6.     Trustor acknowledges that Beneficiary, in making the loan secured hereby, has recognized and relied upon the financial strength and operating ability of the Trustor. Trustor shall not further mortgage or encumber the Property or any interest therein without obtaining the Beneficiary's written consent, which may be withheld for any reason in Beneficiary's sole and absolute discretion. In the event the Trustor voluntarily, involuntarily or by operation of law, shall sell, convey, or transfer the Property, or dispose of the Property or any part thereof, or any interest therein, or agrees so to do (the "Transfer"), without the written consent of Beneficiary being first obtained, the Beneficiary, at its sole option and within its sole discretion, may declare the entire indebtedness secured hereby to be due and payable in full and call for payment of the same in full at once. Consent as to any one Transfer shall not be deemed to be a waiver of the right to require consent to future Transfers and such consent shall not release the Trustor from any obligations hereof, the Note or of any of the Loan Documents.

     7.     In the event that Trustor is an entity rather than a natural person, Trustor shall not change or dissolve its status without the prior written approval of Beneficiary, which shall not be unreasonably withheld. Any single transfer, whether by operation of law or otherwise, of more than ten percent (10%), or an aggregate total of more than twenty five percent (25%) of any equity, capital, ownership, profits or voting interest in the entity that is the Trustor (whether stock, partnership interest or otherwise, and aggregating the current transfer with all previous transfers occurring after the date of this Deed of Trust) shall be deemed a Transfer of the Property for purposes of this Section.

**B:**     **IT IS MUTUALLY AGREED:**

     1.     That any award of damages in connection with any condemnation or any taking, or for injury to the property by reason of public use, or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto Trustor, however, the right to sue therefore and the ownership thereof, subject to this Deed of Trust), and upon receipt of such monies, Beneficiary may hold the same as such further security, or apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

     2.     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to pay. Without affecting the obligation of Trustor to pay and perform as herein required, without affecting the personal liability of any person for payment of the indebtedness secured hereby, and without affecting the lien or priority of lien hereof on the Trust Property, Beneficiary may, at its option, extend the time for payment of said indebtedness, any part hereof, reduce the payment thereon, release any person liable on any of said indebtedness, accept a renewal note therefore, modify the terms of said indebtedness take or release other or additional security, or join in any extension or subordination agreement. Any such action by Beneficiary or Trustee at Beneficiary's direction may be taken without the consent of any junior lienholder, and

shall not affect the priority of the Deed of Trust over any junior lien. Time is of the essence of this Deed of Trust.

3. That at any time, or from time to time and without notice, upon written request of Beneficiary and presentations of this Deed of Trust and said note(s) for endorsement, and without liability therefore, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, and without affecting the security hereof for the full amount secured hereby on all property remaining subject hereto, and without the necessity that any sum representing the value or any portion thereof of the property affected by Trustee's action be credited on the indebtedness, Trustee may: (a) release and reconvey all or any part of said property; (b) consent to the making and recording, or either, of any map or plat of the property or any part thereof; (c) join in granting any easement thereon; (d) join in or consent to any extension agreement of any agreement subordinating the lien, encumbrance or charge hereof. Any Trustor signing this Deed of Trust as a surety or accommodation party or that has subjected its property to this Deed of Trust to secure the debt of another, expressly waives the benefits of A.R.S. Section 12-1641.

4. That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said note(s) to Trustee for cancellation and retention, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the property then held hereunder, and the recitals in such reconveyance, of any matters or facts, shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

5. That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power, and authority, during the continuance of this Deed of Trust, to collect the property income, reserving to Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such property income as it becomes due and payable. Upon any such default Beneficiary may at any time, without notice either by person, by agent, or by receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured or the solvency of Trustor, enter upon and take possession of said property or any part thereof, in its own name sue for or otherwise collect such property income, including that past due and unpaid, and apply same, less costs and expenses of operation and collection, including reasonable attorney's fees of Beneficiary and Trustee, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

The entering upon and taking possession of said property, the collection of such property income, and the application thereof as aforesaid, shall not cure or waive any default or Notice of Trustee's Sale hereunder or invalidate any act done pursuant to such Notice. Beneficiary shall expressly have all rights provided for in A.R.S. Sections 33-702B and 33-807.

6. That upon default by Trustor in the payment of any indebtedness secured hereby, or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust, said Note(s), and all documents evidencing expenditures secured hereby.

Trustee shall record and give Notice of Trustee's Sale and give notice thereof in the manner required by law, and after the lapse of such time as may then be required by law, Trustee shall sell, in the manner required by law, said property at public auction at the time and place fixed by it in said Notice of Trustee's Sale, to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, at its discretion, may postpone or continue the sale from time to time by giving notice of postponement or continuance by public declaration at the time and place last appointed for the sale. Trustee shall deliver to such purchaser its Deed conveying the property so sold, but without any covenant or warranty, expressed or implied. Any persons, including Trustor, Trustee, or Beneficiary, may purchase at such sale. The purchaser at Trustee's sale shall be

1100719.1

entitled to immediate possession of the property as against Trustee or other persons in possession and shall have right to the summary proceedings to obtain possession provided in Title 12, Chapter 8, Article 4, A.R.S., together with costs and reasonable attorney's fees.

After deducting all costs, fees, and expenses of Trustee and of this Deed of Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees of Beneficiary and Trustee, Trustee shall apply the proceeds of sale to payment of: all sums then secured hereby and all other sums due under the terms hereof, with accrued interest, and the remainder, if any, to the person or persons legally entitled thereto, or as provided in A.R.S. Section 33-812. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder. In lieu of sale pursuant to the power of sale conferred hereby, this Deed of Trust may be foreclosed in the same manner provided by law for the foreclosure of mortgages on real property. Beneficiary shall also have all other rights and remedies available to it hereunder and at law or in equity. All rights and remedies shall be cumulative.

7. That Beneficiary may appoint a Successor Trustee in the manner prescribed by law. Trustor and Beneficiary authorize Trustee, in the event any demand or notice is made or tendered to it concerning this Deed of Trust or the property, to hold any money and documents and to withhold action or performance until an action shall be brought in a court of competent jurisdiction to determine the rights asserted or the property of the demand, notice or action requested, and Trustee shall be without liability or responsibility for awaiting such court action. A Successor Trustee herein shall, without conveyance from the predecessor Trustee, succeed to all the predecessor's title, estate, rights, powers, and duties. Trustee may resign at any time by mailing or delivering notice thereof to Beneficiary and Trustor and having so resigned, shall be relieved of all liability and responsibility to Trustor, Beneficiary or otherwise hereunder. "Trustee" herein shall include all successor trustees. Trustee shall not be liable for any action taken in its discretion and in good faith, or upon advice of counsel, or upon any information supplied or direction given by Beneficiary. Unless Trustee is adjudged grossly negligent or guilty of intentional wrongdoing or breach of contract, Trustor and Beneficiary will, upon demand, indemnify and hold harmless Trustee against all costs, damages, attorney's fees, expenses and liabilities which it may occur or sustain in connection with this Deed of Trust or any foreclosure or sale hereof or any count or other action or proceeding arising herefrom.

8. That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder of the note(s) secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so required, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

9. That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made public record as provided by law. Trustee may, but is not obligated to, notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor requests that a copy of any notice of Trustee's sale hereunder be mailed to him at his address set forth herein.

TRUSTOR: Peoria Regional Medical Center LLC.

**SIGNATURE OF TRUSTOR:**

SIGNATURE: _____
              Timothy A. Johns, Manager

1100719.1

STATE OF _____ )
                        ) ss.
COUNTY OF _____ )

The foregoing instrument was acknowledged before me, the undersigned Notary Public, by <u>Timothy A. Johns, Manager of Peoria Regional Medical Center LLC.</u>, this _____ day of _____, 20___.

_____
Notary Public

1100719.1

## PROMISSORY NOTE SECURED BY DEED OF TRUST
(Installment Payments)

**DATE:** 12/6/2019

**US $**  $193,569.00                                                                 Phoenix, Arizona

**Property Address:** 26320 N. Lake Pleasant Pkwy Peoria, AZ 85383

FOR VALUE RECEIVED, the undersigned ("Maker") promises to pay without offset or deduction to the order of **Scott A. Gould, an unmarried man**, their successors and assigns ("Holder"), the principal sum of **One hundred ninety-three thousand five hundred sixty-nine and 00/100 DOLLARS, (U.S. $193,569.00)**, with interest on the unpaid principal balance from **12/10/2019**, until the date the entire outstanding principal balance has been paid in full at the rate of **thirteen percent (13%)** per annum ("Annual Rate"). A minimum of 30 days interest is due. Interest on the outstanding principal balance shall be calculated on a daily basis (based on a three hundred sixty (360) day year). The principal and interest shall be payable for the benefit of Holder at **PO Box 97485, Phoenix, AZ 85060** ("account servicing agent") or such other place as Holder may, from time to time, designate in writing, commencing on **1/10/2020**, and continuing on the same day of each and every successive calendar month (the "Payment Due Date") with the entire principal balance together with all accrued and unpaid interest, and all other obligations of Maker under this Note, if not sooner paid, shall be due and payable in full on **12/10/2020** ("Maturity Date"). All payments under this Note and under the Loan Documents (as below defined) shall be in lawful money of the United States of America, which at the time of payments shall be legal tender for the payment of public and private debts.

If any installment under this Note is not actually received by account servicing agent within five (5) days of the Payment Due Date; or if all principal, interest and any other amounts due hereunder are not fully paid on or before the Maturity Date; or if there is a default under any agreement between or among Holder and Maker or under any of the Loan Documents, Maker shall be deemed to be in default here under (a "Default"). In the event of a Default, the entire principal amount outstanding hereunder and all accrued interest thereon shall, at the option of Holder, be accelerated, and shall at once become due and payable. Holder may exercise this option to accelerate, without notice, during any default by Maker regardless of any prior forbearance. No failure to exercise or delay in exercising such option shall constitute a waiver of such option in the event of any subsequent Default hereunder. In the event of any Default in the payment of this Note, and if the same is referred to an attorney for collection or any action at law or in equity is brought with respect hereto, Maker shall pay Holder all expenses and costs, including, but not limited to, attorneys' fees, whether suit is instituted or not. In the event suit is instituted all court costs and attorneys' fees shall be set by the court and not by jury and the amount of such award shall be included in any judgment obtained by the Holder, and shall be secured by the Loan Documents.

Upon the occurrence of a Default hereunder, Holder may resort to any collateral, whether real property or personal property, now or hereafter given as security for this Note, in any order, and may sell and dispose of such collateral in whole or in part, at any time or from time to time with no requirement on the part of the Holder of this Note to marshal assets. Holder shall not be required to preserve any rights in such collateral as against prior parties. Holder is entitled to the benefits of any and all Loan Documents securing or guaranteeing this Note. For construction loans refer to descriptions of draw funding, default conditions, actions and representations. The Construction Loan Agreement with Representations and Warranties is hereby attached.

LATE CHARGE. Maker hereby acknowledges that any late payment by Maker to Holder will cause Holder to incur additional expenses not contemplated hereby in servicing the Loan Documents, and will result in losses to Holder of the use of the money due, and in frustration to Holder in meeting its other commitments, but that it is extremely difficult or impractical to ascertain the extent of such damages. Accordingly, Maker will pay as damages a late charge for each monthly payment that is not actually received by Holder or account servicing agent within five (5) days after the Payment Due Date. Such late charge shall be equal to ten percent (10%) of the delinquent monthly payment, and Maker agrees that such late charge is a reasonable estimate of Holder's damages. Such late charge shall be in addition to and separate from any increase in interest rate as

1100719.1

hereinafter set forth. The late charge shall apply individually to all payments past due, there will be no daily adjustment and said late charge shall be used to defray the costs of the Holder incident to collecting such late payment. The late charge is due and payable in addition to and together with the delinquent installment. However acceptance by Holder of any installment payment that does not include said late charge shall not be a waiver of the right to collect said late charge unless said waiver is memorialized in a writing signed by Holder. The amount of any late charge not paid in accordance with this provision shall be added to the principal balance of this Note and shall thereafter bear interest at the Annual Rate. This provision shall not be deemed to excuse a late payment or be deemed a waiver of any other rights the Holder may have to collect any other amounts provided or to be paid hereunder or to declare a default or exercise any remedy available hereunder or under the Loan Documents or to otherwise prevent Holder from exercising any of the other rights and remedies granted hereunder or available at law or in equity. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Holder will incur by reason of late payment.

In the event of Default due to nonpayment of principal or interest provided for herein, then, in that event, and in addition to any and all other provisions hereof, each and every such delinquent payment along with the entire principal balance and accrued interest, shall bear interest to the extent permitted by law at the rate which is equal to twenty-nine percent (29%) per annum (the "Default Rate of Interest") from the date on which the payment was due and payable until the delinquent payment is received by Holder or account servicing agent. If any installment payment shall be due on a day that is not a business day, then the payment shall be deemed due on the next day which is a business day. The term "business day" shall mean any day which is not a Saturday, Sunday or federally observed holiday. If such Default Rate of Interest may not be collected from Maker under applicable law, then the Note shall bear interest at the maximum increased rate of interest, if any, which may be collected from Maker under applicable law.

Maker may prepay this Note in whole or in part at any time and from time to time, without premium or penalty. All prepayments shall include payment of all accrued and unpaid interest to the date of such prepayment on the amount of principal being prepaid. Partial prepayment shall not postpone or reduce any regular payments of principal or interest, but shall be credited first to any collection costs, attorney's fees, beneficiary advances (including interest thereon at the Default Rate of Interest) and all other amounts due under the terms of the Loan Documents, next to any accrued and unpaid late charges, default interest, regular interest and then to the principal (the Deed of Trust and Assignment of Rents, and any Fixture Filing, Security Agreement or any other instruments evidencing, governing or securing Maker's obligation under this Note are collectively referred to herein as "Loan Documents").

Maker and all endorsers and guarantors hereof jointly and severally agree with Holder that Holder may, from time to time, extend the time for payment of said outstanding principal balance or any part thereof, reduce the payments thereon, release anyone liable on any of said outstanding principal balance, accept a renewal of this Note, modify the terms and time of payment of said outstanding principal balance, join in any extension or subordination agreement, release any security given therefor, take or release other or additional security, or agree in writing with Maker to modify the rate of interest or period of amortization of this Note or change the amount of the monthly installments payable hereunder, without notice in such manner as Holder may see fit, all without in any way affecting or releasing the liability of Maker and all endorser and guarantors hereof.

All makers, sureties, guarantors and endorser hereof, severally waive demand, diligence, presentment for payment, protest and demand, and notice of extension, dishonor, protest, demand and nonpayment of this Note, and waive any and all lack of diligence or delays in collection or enforcement hereof. This Note shall be the joint and several obligations of all makers, sureties, guarantors and endorser, and shall be binding upon them and their successors and assigns. All makers, sureties, guarantors and endorser hereof, severally waive any homestead or exemption right.

Maker agrees to an effective rate of interest that is the rate stated in this Note plus any additional rate of interest resulting from any other charges in the nature of interest paid or to be paid in connection with this Note. In no event, whether by reason of

_____ _____

1100719.1

Case 2:17-bk-11742-SHG    Doc 236    Filed 12/13/19    Entered 12/13/19 12:15:21    Desc
Main Document    Page 13 of 20

demand for payment or acceleration of the maturity of this Note or otherwise, shall the interest contacted for, charged, or received by Holder hereunder or otherwise, exceed the maximum amount permissible under applicable law. If, under any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the interest payable to Holder shall be reduced automatically to the maximum amount permitted under applicable law. If Holder shall ever receive any sum or other item of value deemed interest under applicable law that would, apart from this provision, be in excess of the maximum lawful amount, an amount equal to any amount which would have been excessive interest shall be applied to the reduction of the principal amount owing on the Note in the inverse order of maturity and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid principal balance of the Note, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term (including any renewal or extension) of the indebtedness evidenced by this Note so that the amount of interest on account of such indebtedness does not exceed the maximum permitted by applicable law. The provisions of this paragraph shall control all existing and future agreements between Maker and Holder.

Prior to each disbursement of sums hereunder, the following conditions shall have been satisfied, as reasonably determined by Holder: (1) Maker shall have submitted to Holder a certified invoice to be in such form and certified by such parties as required by Holder, together with such schedules, affidavits, releases, waivers, statements, invoices, bills, and other documents, certificates and information as may be reasonably required by Holder ("Draw Request"); (2) no change shall have occurred which could have a material adverse effect on Maker, the Property or Holder's right or ability to receive payment in full of the Loan; (3) no Default shall exist; (4) the representations and warranties of Maker in the Loan Documents shall be true and correct on and as of the date of the disbursement with the same effect as if made on such date.

This Note provides for an interest reserve equal to one year (12 months) from the date of consummation. The terms of said reserve are set in the previous sections and are agreed to by Maker and Holder of this Note.

The indebtedness evidenced by this Note is secured by Deed of Trust and Assignment of Rents of even date herewith. This Note shall be interpreted in accordance with the laws of the State of Arizona. The Maker of this Note certifies that the indebtedness evidenced by this Note is obtained for business or commercial purposes and that the proceeds thereof will not be used primarily for personal, family, household, or agricultural purposes.

MAKER:

_____    Date: _____
Peoria Regional Medical Center LLC.
By: Timothy A. Johns, Manager

1100719.1

# BORROWER CERTIFICATION AGREEMENT

Date: **12/6/2019**

Address: **26320 N. Lake Pleasant Pkwy Peoria, AZ 85383**

Borrower Name: **Peoria Regional Medical Center LLC.**

Borrower/Maker hereby acknowledges that the financing being provided is being used to pay for some, but not all, of the real property taxes and other costs associated with an Investment Property. If the subject property is a Single Family Residence, Townhouse or Condominium, Borrower/Maker expressly warrants to Lender/Holder that the property represents a commercial purchase, for profit venture, and that Borrower/Maker will not and has no intention of occupying the property as a primary or secondary personal residence.

Borrower/Maker agrees and acknowledges that this Borrower Certificate and the representations contained herein are a material inducement for Lender/Holder to fund the subject loan, and Borrower/Maker acknowledges that Lender/Holder would not have considered funding the loan if this certification and representation was not tendered by Borrower/Maker.

Borrower/Maker understands that the Lender/Holder is providing Private Money for loan funds and that the Lender/Holder is a private money source, who is not operating under any guidelines of Licenses, or under the supervision of any State Banking Department or any other Government Agency.

Borrower/Maker certifies that the loan funds provided will in no way be considered a "Consumer Loan" because Borrower/Maker is representing himself or herself as a Professional Real Estate Investor.

Borrower/Maker acknowledges that he/she had multiple sources for the funding of the subject loan and selected the Lender/Holder for various business and economic reasons.

**AGREED AND ACCEPTED**

_____     Date: _____
Peoria Regional Medical Center LLC.
By: Timothy A. Johns, Manager

1100719.1

# PRIVACY NOTICE

In the course of our business relationship with you, we collect information about you that is necessary to provide you with our products and services. We treat this information as confidential and recognize the importance of protecting it. We value your confidence in us.

This notice from the member companies of RLS Mortgage Inc., (the Company) listed below* describes our privacy practices regarding information about our customers and former customers that obtain financial products or services from us for home loans.

**Information We Collect**

We collect and maintain information about you to provide you with a mortgage loan. We collect certain information ("nonpublic personal information") about you from credit reports and other following sources:
- Information we receive from you on applications or other forms, such as your Social Security number, assets, income, and property information;
- Information about your transactions with us, our affiliates, or others, such as another mortgage lender;
- Information we receive from a consumer reporting agency such as credit report information and county recorder's office

**How We Protect Your Information**

At RLS Mortgage, Inc., our customers are our most valued assets. Protecting your privacy is important to us. We restrict access to personal information about you to those individuals, such as our employees, who provide you with our products and services. We require those individuals to whom we permit access to your customer information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information.

We do not disclose any nonpublic personal information about you, as our customer or former customer, except as described in this notice.

**Information We Disclose**

We may disclose the nonpublic personal information we collect about you, as described above, to companies that perform credit reports, title reports, loan approval or decline, and appraisers and to other third parties, all as permitted by law.
We are permitted to disclose information you provide us to third party lenders who are offering certain products that may be suited for your loan request, such as a second mortgage.

**Sharing Information with Affiliates**

The RLS Mortgage, Inc. family encompasses RLS Capital, Inc.; sharing information enables our affiliate to offer you a more complete range of products and services. We may disclose nonpublic information, as described above in Information We Collect, to our affiliates, which include:

1100719.1

## Scott A. Gould

We are permitted by law to share with our affiliates our transaction and experience information with you.

In addition, we may share our affiliate's consumer report information, such as information from credit reports and certain application information that we have received from you and from third parties, such as consumer reporting agencies and landlords.

## Modifications to Our Privacy Policy

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic personal information about you with nonaffiliated third parties. Before we do that, we will provide you with a revised privacy notice and give you the opportunity to opt out of that type of information sharing.

## Website

The RLS Mortgage, Inc. website is www.rlsmortgage.com

## Recipients of this Notice

We are providing this notice to the named borrower of the loan application residing at the mailing address to which we send your loan and payment information. If there is more than one borrower, only the named primary borrower will receive this notice, though any borrower may request a copy of this notice. You may receive more than one copy of this notice if you have more than one loan with RLS Mortgage, Inc. You may also receive notices from affiliates, other than those listed below. Please read those notices carefully to determine your rights with respect to those affiliates' privacy practices.

## More Information about the Federal Laws?

This notice is required by federal law. If you would like additional information about these federal laws, please contact your local office of the Department of Housing and Urban Development.

**Signed:** RLS Mortgage, Inc. //Robert Koehler, President

*The above is a list of the affiliates on whose behalf this privacy notice is being provided. It is not a comprehensive list of all affiliates of the company.

Initial

1100719.1

Case 2:17-bk-11742-SHG    Doc 236    Filed 12/13/19    Entered 12/13/19 12:15:21    Desc
Main Document    Page 17 of 20

# INSURANCE REQUEST

Date: 12/6/2019

Agent Name: _____

Insurance Company: _____

Agent Phone: _____

Agent Fax: _____

Agent Email: _____

**Loan Number:** _____

**Insured/Borrower:** Peoria Regional Medical Center LLC. a(n) Arizona Limited Liability Company / Timothy A. Johns

**Property Address:** 26320 N. Lake Pleasant Pkwy Peoria, AZ 85383

## WE REQUIRE *EVIDENCE OF INSURANCE* ON THE PROPERTY WITHIN *24 HOURS* OF FUNDING.

### WE MUST BE LISTED AS 1st MORTGAGEE. SEE BELOW FOR DETAILS

Mortgagee: Scott A. Gould, an unmarried man, ISAOA/ATIMA
Address: PO Box 97485 Phoenix, AZ 85060

**PLEASE BE ADVISED WE DO NOT IMPOUND FOR INSURANCE. PLEASE SEND INVOICE TO THE INSURED FOR PAYMENT.**

PLEASE EMAIL THE *EVIDENCE OF INSURANCE* WITH THE CORRECT MORTGAGEE INFORMATION TO CHRIS: CHRIS@RLSMORTGAGE.COM

FEEL FREE TO CONTACT US AT 480-945-2799 WITH QUESTIONS

Requested/Approved by: _____
                        Owner

1100719.1

# LENDER'S INSTRUCTIONS

<u>Physical address</u>: 4455 E. Camelback Rd., Suite D-135, Phoenix, AZ 85018

Date: <u>12/6/2019</u>

Property Address: **26320 N. Lake Pleasant Pkwy Peoria, AZ 85383**

Lender: <u>Scott A. Gould, an unmarried man</u>

Borrower: <u>Peoria Regional Medical Center LLC.</u> a(n) <u>Arizona Limited Liability Company</u>

Loan Amount: $193,569.00

1. Please issue an ALTA Title Policy F.B.O. <u>Scott A. Gould, an unmarried man</u> @ P.O. Box 97485, Phoenix, AZ 85060. Please Deliver Final Loan Policy Via Email to Chris White - email: <u>chris@rlsmortgage.com</u>.

2. Please issue $1,300 Loan Fee payable to **RLS MORTGAGE, INC**. at time of closing.

3. Please provide copy of Borrower's Driver's License or alternate valid form of Photo Identification.

4. Please record our Deed of Trust in <u>First</u> position.

5. Please have borrower sign and date ALL signature lines where applicable on all documents. Including the Note, Deed of Trust, Borrower Certifications, and Form W-9.

6. Please provide "evidence of insurance" from the Borrower listing <u>Scott A. Gould, an unmarried man</u>, ISAOA/ATIMA as the Mortgagee with a minimum SIX MONTH policy. (See attached Insurance Demand for Details).

7. No additional endorsements required.

8. Please provide borrower with attached payment coupons.

9. Please deliver the "Original" Note, Borrower Certification/Acknowledgement, copy of the Deed of Trust, Loan Fee – Payable to RLS Mortgage, Inc., copy of Photo ID, Settlement Statement, and Form W-9 to:

## 4455 E. Camelback Rd., Suite D-135, Phoenix, AZ 85018

1100719.1

# Form W-9
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer Identification Number and Certification

Give Form to the requester. Do not send to the IRS.

**Print or type**
**See Specific Instructions on page 2.**

Name (as shown on your income tax return)

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:
- ☐ Individual/sole proprietor
- ☐ C Corporation
- ☐ S Corporation
- ☐ Partnership
- ☐ Trust/estate
- ☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____
- ☐ Other (see instructions) ▶

Exemptions (see instructions):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

Address (number, street, and apt. or suite no.)

City, state, and ZIP code

Requester's name and address (optional)

List account number(s) here (optional)

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below), and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**  Signature of U.S. person ▶          Date ▶

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien,
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,
- An estate (other than a foreign estate), or
- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X    Form **W-9** (Rev. 8-2013)