**AIKEN SCHENK RICCIARDI P.C.**
**2390 E. Camelback Rd., Suite 400**
**Phoenix, Arizona 85016**
**Telephone: (602) 248-8203**
**Facsimile: (602) 248-8840**
**E-Mail: prr@aikenschenk.com**

**Philip R. Rupprecht - 009288**
Attorneys for Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PEORIA REGIONAL MEDICAL CENTER, LLC,<br><br>　　　　　　　　　　　Debtor.<br><br>Address:　　8020 E. Palm Ln.<br>　　　　　　　Mesa, AZ 85207<br><br>Taxpayer ID No(s).: xx-xxx0458 | Chapter 11 Proceedings<br><br>Case No. 2:17-bk-11742-SHG<br><br>**MOTION TO APPROVE PURCHASE CONTRACT, BIDDING PROCEDURES AND TO AUTHORIZE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS** |

Peoria Regional Medical Center, LLC (the "Debtor"), moves this Court for the entry of an order approving the Purchase and Sale Agreement (the "PSA") attached hereto as **Exhibit 1,** regarding real property owned by the Debtor located at 26320 N. Lake Pleasant Pkwy., Peoria, Maricopa County, AZ 85345 (APN 201-30-215), to Jeff Thomas, PLLC and/or its assignee, or to the highest bidder, free and clear of liens, claims, and interests, with any liens, claims, and interests to attach to the sale proceeds pursuant to 11 U.S.C. §363. The Debtor's Motion is supported by the following Memorandum of Points and Authorities, which is incorporated by reference herein.

DATED this 27th day of January, 2020.

　　　　　　　　　　　　　　　　　AIKEN SCHENK RICCIARDI P.C.

　　　　　　　　　　　　　　　　　By /s/ Philip R. Rupprecht
　　　　　　　　　　　　　　　　　　　Philip R. Rupprecht
　　　　　　　　　　　　　　　　　　　2390 East Camelback Road, Suite 400
　　　　　　　　　　　　　　　　　　　Phoenix, Arizona 85016-3479
　　　　　　　　　　　　　　　　　　　Attorneys for Debtor

1

| | |
|---|---|
| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 2 | I.    <u>INTRODUCTION</u> |

1. This matter is before the Court on the Debtor's Motion to Approve Purchase Contract, Bidding Procedures and to Authorize Sale of Real Property Free and Clear of Liens, Claims and Interests (the "Motion"). Pursuant to the Motion, the Debtor seeks the entry of an order approving the PSA and approving the sale of commercial real property owned by the Debtor to Jeff Thomas, PLLC, and/or its assignee ("Purchaser").

2. The Debtor is also proposing an auction-style sale in order to solicit any other interested buyers so as to ensure that Purchaser's offer is truly the best.

3. On October 4, 2017, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

4. As of the Petition Date, the Debtor owned approximately 7.1205 acres of raw land located at 26320 N. Lake Pleasant Pkwy., Peoria, Maricopa County, AZ 85345 (APN 201-30-215) (the "Property") and legally described on **Exhibit "A"** to the PSA.

5. The Debtor wishes to sell the Property as part of its Chapter 11 reorganization and has explored several offers from interested parties.

6. To date, the Purchaser has offered the best and most advantageous terms.

7. The Debtor desires to accept the Purchaser's offer and on January 27, 2020 entered into the PSA. The PSA is conditioned upon this Court's approval.

8. The Closing Date for the sale transaction shall be thirty days after the expiration of the Feasibility Period, as defined in the PSA.

II.    <u>THE REAL PROPERTY</u>

The Property subject to the PSA is the Debtor's vacant land located at 26320 N. Lake Pleasant Pkwy., Peoria, Maricopa County, AZ 85345 (APN 201-30-215). The relevant information for the Property is provided in the PSA attached hereto as **Exhibit "1".** Exhibit 1 is unsigned by the Debtor's representative. The representative is an emergency room physician who was unable to sign the PSA today. The representative is fully aware of the PSA and agreed to its terms. The Debtor will supplement this Motion tomorrow with a fully

2

executed **Exhibit 1**. The Property contains a steel structure that has been on-site for several years. It is included in the PSA.

The Property is owned by the Debtor. The Debtor approximated the value of the Property as $5,314,900.00 in its Schedules. However, this value was based on the Maricopa County Assessor's full cash value as of 2018. A representative of the Debtor has since met with the Assessor and learned that its calculation may have taken into account the value of the adjacent property or otherwise been inaccurate. In 2019, the Maricopa County Assessor adjusted its full cash value of the Property to $2,759,200.

The Purchaser's offer is in excess of the Assessor's 2019 full cash value and its terms, financial and otherwise, are more favorable than any of the other offers that the Debtor received. The Debtor believes that the current offer of $3,155,000.00 is at the high end of today's market.

The proposed purchase price will allow the Debtor to pay its property taxes and secured creditors in full. It will also allow for partial payments to administrative creditors. In addition, the offer includes a right of first offer so that once construction is complete the Debtor may lease space for its planned hospital operations. In short, the Purchaser's offer provides the Debtor with a path out of bankruptcy, a way to pay the majority of its creditors, and a possible location for future operations.

III. THE DEAL

The PSA, a copy of which is attached hereto as **Exhibit "1"**, would be entered into between the Debtor and the Purchaser. The Purchaser is not related to the Debtor. As set forth in the PSA, the purchase price (the "Purchase Price") for the Property shall be in an amount in the aggregate sufficient to satisfy the following:

(a) Two Million Four Hundred Thousand Dollars ($2,400,000.00), in satisfaction of the first-position lien on the Property held by Fastest Lap, LLC.

(b) Real property taxes (including all penalties and interest) due and owing on the Property through the Closing Date (as set forth in Section 7(c) of the PSA), in the

3

approximate amount of Five Hundred Thousand Dollars ($650,000.00).[1]

        (c)    City of Peoria's secured claim against the Property in the approximate amount of Five Thousand Dollars ($5,000.00).

        (d)    Payment in the amount of One Hundred Thousand Dollars ($100,000) toward administrative claims.

        (e)    A right of first offer to rent some or all of the space in the medical services building that will be constructed on the Property.

In addition, the Purchaser has agreed to pay almost all of the costs associated with the sale. The final Purchase Price shall be calculated by the Escrow Agent as of the Closing Date, and shall be payable as follows:

        (a)    Fifty Thousand Dollars ($50,000.00) of earnest money shall be deposited by Purchaser into Escrow by wire transfer within two (2) business days following Opening of Escrow (which sum, together with any and all interest earned thereon, shall be referred to as the "Initial Earnest Deposit"). If Purchaser does not terminate the PSA prior to expiration of the Feasibility Period (as defined in Section 9(c) of the PSA), then Purchaser shall deposit into Escrow additional earnest money in the amount of Fifty Thousand Dollars ($50,000.00). The Initial Earnest Deposit and the Additional Earnest Deposit are hereinafter collectively referred to as the "Earnest Money".

        (b)    The balance of the Purchase Price, less the Earnest Money, shall be deposited by Purchaser into Escrow in cash or by other immediately available funds on or prior to the Closing Date (as defined in Section 5 of the PSA), subject to closing costs, adjustments and prorations as provided the PSA.

---

[1] The Debtor recently received approval to borrow enough to pay the post-petition real property taxes. Once paid, the remaining unpaid taxes plus the lien of the secured creditor should approximate $650,000 total.

4

1111459.1

The Debtor and Purchaser mutually agree to indemnify and hold harmless the other of, from and against any real estate commission to any other broker that may be asserted to be payable in connection with the sale of the Property as a result of any action of the Debtor or Purchaser, respectively. Prorations will be made for real and personal property taxes, assessments and other normal and recurring costs and expenses relating to the Property as of the date of the close of escrow.

As of the Petition Date, the Property was subject to a secured claim of approximately $2.2 million. In addition, the Debtor owed approximately $429,900.13 in real property taxes to the Maricopa County Treasurer and the CP Buyers. The Debtor also owes the City of Peoria approximately $5,388.79 related to its abatement assessment.

The sale proceeds will be sufficient to pay the approximately $2.2 million secured claim held by Fastest Lap, LLC (there are no junior liens on the Property), its successors and/or assigns, the Maricopa County Treasurer, the CP Buyers and the City of Peoria in full. The purchase price will also pay Debtor's administrative claims and provide funds for payments to unsecured creditors.

The Closing Date for the sale transaction shall be thirty days after the expiration of the Feasibility Period (as defined in Section 9(c) of the PSA).

IV. <u>INTERESTS IN THE PROPERTY</u>

The Court recently approved § 341 financing, secured by the property to pay post-petition real property taxes. That lien, $192,100, will be paid in full out of the proceeds of the sale.

Fastest Lap, LLC claims a first position lien on the Property in the approximate amount of $2.2 million. This secured lien, in the amount that would be allowable under the Bankruptcy Code, is intended to be paid directly out of the escrow. In fact, Fastest Lap, LLC is privy to the terms and supports the proposed sale. There are no junior liens on the Property.

The underlying sale transaction will be free and clear of all liens, claims, and interests, pursuant to 11 U.S.C. §363 so that the Purchaser will take the Property free and clear of liens and future disputes. Any liens, claims, and interests will attach to the net sale proceeds and

5

1111459.1

Case 2:17-bk-11742-SHG    Doc 245    Filed 01/27/20    Entered 01/27/20 16:23:20    Desc
Main Document    Page 5 of 10

will be paid as set forth above.

The sale is subject to higher and better offers at the time of the sale hearing.

## V. BIDDING PROCEDURES

The Debtor has had one sale drop out, but has engaged in negotiations with other prospective purchasers. While the Debtor believes that the PSA presents the highest and best offer, the sale is subject to higher and better offers at the time of the sale hearing.

The bid procedures for the sale are as follows:

1. Notice of the Sale of the Property will be mailed by Debtor to all known creditors and parties in interest at the address for each provided on the most recent Master Mailing List on file with this Court.

2. Each proposed bid procedure is subject to Bankruptcy Court approval.

3. Purchaser reserves the right to modify the offer contained in its PSA at any time on or prior to the sale hearing.

4. Except as otherwise provided at the sale hearing, the Property shall be sold without representations, and free and clear of Liens, Claims, Rights, Encumbrances and Interests (collectively "Interests") in accordance with §§105 and 363 of the Bankruptcy Code, with all valid Interests to attach to the net proceeds from the sale of the Property.

5. All bidders are encouraged to perform their own due diligence.

6. A "Qualified Bidder" is a potential bidder that demonstrates to the Debtor a reasonable likelihood of the ability to close on the proposed purchase in a timely manner by providing the Debtor with evidence of the potential bidder's ability to consummate the proposed transaction, with (i) a copy of a bank or other financial statement with a balance sufficient to pay the proposed bid in full or (ii) a letter of credit to be submitted to the Debtor's counsel no later than close of business five days prior to the date of the Auction to participate in the Auction.

7. Although each Qualified Bidder will be allowed to participate in the Auction,

any non-Qualified Bidder wishing to participate in the Auction will only be allowed to bid upon Bankruptcy Court approval.

8. Debtor's counsel will provide prospective bidders with such information as may be reasonably requested which the Debtor and/or their counsel hold in their possession, or which may be obtained by the Debtor.

9. The Auction of the Property shall be governed by the following procedures:

a. All Qualified Bidders shall appear in person at the Auction of the Property, or through a duly authorized representative.

b. Each Qualified Bidder participating in the Auction of the Property will be expected to confirm at the Auction that it has not engaged in any collusion with any other Qualified Bidder, creditor, or other party in interest regarding these Bid Procedures, the Auction, or any proposed transaction relating to the Property.

c. At the Auction, the first bid for the Property, other than the offer of Purchaser (the "Lead Bidder") shall be not less than $2,905,000.00. Subsequently, bidding will continue in minimum increments of at least $100,000.00, with the specific increments for each round of bidding to be announced on the record at the Auction unless directed otherwise by the Bankruptcy Court.

d. All bidders shall have the right to, at any time, request that the Debtor or Court announce, subject to any potential new bids, the current highest or best bid and, to the extent requested by any bidder, use reasonable efforts to clarify any and all questions such bidder may have regarding the Debtor or Court's announcement of the current.

e. The sale of the Property is subject to higher and better bids at the Auction.

f. Upon conclusion of bidding, the Auction shall be closed, and the Debtor shall identify and determine in his business judgment the highest and/or

7

1111459.1

Case 2:17-bk-11742-SHG    Doc 245    Filed 01/27/20    Entered 01/27/20 16:23:20    Desc
Main Document    Page 7 of 10

best bid for the Property (the "Successful Bid") and the entity or entities submitting such Successful Bid, (the "Successful Bidder"), and advise the bidders of such determination.

    g.    In addition, the Debtor will determine which bid, if any, is the next highest and/or best bid and designate such bid as a "Backup Bid" in the event the Successful Bidder fails to consummate the contemplated transaction. A bidder that submitted a bid that is designated a Backup Bid is a "Backup Bidder." Each Backup Bid shall remain open and binding until the earlier of: (i) two (2) business days after the closing of the transaction(s) by which all of the Property has been transferred to one or more bidders pursuant to these Bid Procedures or (ii) fourteen (14) days after the date of the Auction.

10. The sale shall be subject to Court approval.

11. Any potential Successful Bidder will be required, at the time of the hearing, to provide a $10,000.00 non-refundable deposit, and subject to close on terms substantially similar or better than the Lead Bidder's present offer.

## VI. THE LAW.

11 U.S.C. §363(f) allows the debtor in possession to sell residential property of the estate free and clear of liens, claims and interests if:

    (1)    applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4)    such interest is in bona fide dispute; or

    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Under the circumstances, it appears that the sale price of $2,805,000.00 generates funding with which to satisfy all secured obligations on the Property. Accordingly, the Debtor

asks that the sale be free and clear of all liens, claims and interests so that the Purchaser may receive the Property free of future disputes and claims.

WHEREFORE, the Debtor requests the entry of an order:

1. Approving the Purchase and Sale Agreement;

2. Approving the sale of the Property to take place consistent with the terms and conditions of this Motion;

3. Authorizing the Debtor and/or the title company to disburse the sale proceeds consistent with the terms of this Motion; and

4. Granting such further relief as the Court deems appropriate and just.

DATED this 27th day of January, 2020.

                                                AIKEN SCHENK RICCIARDI P.C.

                                                By /s/ Philip R. Rupprecht
                                                    Philip R. Rupprecht
                                                    2390 East Camelback Road, Suite 400
                                                    Phoenix, Arizona 85016-3479
                                                    Attorneys for Debtor

COPY of the foregoing mailed, or served
via electronic notification* or fax** if so marked,
this 27th day of January, 2020, to:

U.S. TRUSTEE'S OFFICE * ustpregion14.px.ecf@usdoj.gov
Renee Sandler Shamblin* Renee.S.Shamblin@usdoj.gov
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Lori A. Lewis* LewisL01@mcao.maricopa.gov
Maricopa County Attorney's Office
Civil Services Division
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
*Attorney for Maricopa County Treasurer*

/ / /

/ / /

9

1111459.1

David H. Benton* david.benton@peoriaaz.gov; caofiling@peoriaaz.gov
Office of the City Attorney
City of Peoria
8401 West Monroe Street, Room 280
Peoria, Arizona 85345
*Attorneys for City of Peoria*

Daren R. Brinkman* Firm@Brinkmanlaw.com
Brinkman Portillo Ronk, APC
4333 Park Terrace, #205
Westlake Village, CA 91361
*Attorneys for David Gottlieb, Creditor Trustee
 of the Gilbert Hospital Unsecured Creditor Trust*

Bill McCalmont* bill@firstaztitle.com
First Arizona Title Agency
6263 N. Scottsdale Road, Suite 190
Scottsdale, AZ 85250
*Title Company*

ADB Investments, L.L.C.
Attn: David T. Reesor* davidreesor@photoadb.com
11388 E. Appaloosa Place
Scottsdale, AZ 85259
*Purchaser*

David Engelman* dwe@eblawyers.com
Kurt A. Peterson* kap@eblawyers.com
Engelman Berger, P.C.
3636 N. Central Ave., Suite 700
Phoenix, AZ 85012
*Attorneys for the Purchaser*

/s/ Lisa Rustenburg

10

1111459.1

Case 2:17-bk-11742-SHG    Doc 245    Filed 01/27/20    Entered 01/27/20 16:23:20    Desc
Main Document    Page 10 of 10